It's the United States, I'm sorry, it's Alberto Ruiz v. the officers and yesterday I had a little bit of trouble enforcing the time limits. When you see me start going like this, that means just stop, but we're delighted to have you and we'll be happy to hear from you. Thank you, Your Honor, and I'm delighted to be here. Good morning. My name is Jordan Redavid and I have the privilege of continuing to represent Mr. Alberto Ruiz in this appeal. Before I begin, I would like to reserve three minutes for rebuttal, please. We'll give it to you. The purpose of this appeal today is to ask this court to reverse an adverse final judgment that followed a trial in the Southern District of Florida and remand with instructions to give Mr. Ruiz a new trial. On appeal in the brief, we raised what amounts to five issues. I'd like to spend my time this morning, unless the court has questions on other issues, on the three primary arguments, and that being first, that the district court irreversibly erred and abused its discretion when it allowed the introduction and admissibility of the video surveillance tape that memorialized my client committing pretty heinous criminal conduct that our position below and on appeal was simply not relevant and to the extent that it was, the prejudicial value substantially outweighed it. The second argument I'd like to discuss this morning is the district court's improper involvement in its examination or continued examination of Mr. Ruiz and also, at times, interrupting the direct examination of Mr. Ruiz by counsel. The third issue that I'd like to address is the comments in opening and closing statements and arguments respectively by defense counsel, which admittedly, many of which were not objected to, and this court is reviewing on a plain error standard, but nevertheless, I think in the totality of looking at them, some of them are, simply put, egregious enough to warrant relief. I'd like to begin with the video. Actually, I know you want to cover those substantive issues, but first, I think that we need to determine whether the appeal was timely. Why shouldn't our ordinary rule that parties who are represented by counsel can't make I think that rule applies universally. We're not asking for any exception to that rule. We're just simply asking for the facts that exist below to be applied to that rule and realize that it's not a prohibition jurisdictionally, and here's the reason. Mr. Ruiz was originally a pro se plaintiff, pro se litigant. In fact, he basically held the title of pro se litigant all the way through the eve of trial. When a few colleagues of mine and myself and our firm decided to represent Mr. Ruiz, it was as part of the Southern District of Florida's volunteer attorney program with the express, I'll say, promotion that it was an opportunity to represent someone at trial. Our position below, and I maintain it on appeal, is that at its core, the scope of an attorney-client relationship is dictated by the terms understood by the attorney and the client. I will say more practically speaking that when a trial finalizes such that a final judgment is entered, then you have the client file a pro se motion for a new trial, that is record evidence that even he understood, he being Mr. Ruiz, that the termination, rather the representation had concluded. Now, there's also record evidence that when my firm reappeared, they actually reappeared. This was not simply a random filing adopting it. It was a formal filing saying the law firm of Fisher David is reappearing as counsel for purposes of post-trial proceedings and appeals. Our position is simply this, where there is record evidence to make clear that our firm's representation was initially limited just to trial, and then separately we decided to take on continuing as pro bono counsel later in what amounts to a secondary representation. To answer your Honor's question, that was our concern below. Your express understanding with Mr. Ruiz was that your representation ended at the end of the trial. Is that right? Yes, Your Honor. Well, this is a model for our law students here that you were willing to represent Mr. Ruiz pro bono without getting paid, and we appreciate that, and I guess you're still not getting paid as you appear here. I still have no expectation to be, but I will say, Your Honor, this wasn't my first time taking a case pro bono in the Southern District of Florida through that same volunteer attorney program, and I actually cited in the brief that we filed two other occasions before Judge Dimitrileous where I, at the time, was a solo practitioner, but I had taken cases, excessive force cases, just like this, to trial. Trial had concluded, my representation had ended, my former clients at that time then proceeded on appeal by themselves. That particular district court meeting, Judge Dimitrileous, that never came up. I simply had no reason to believe that. My understanding from my ethical obligations were that the attorney and the client determine the scope of representation, and that's simply my position, and I'm not asking you to look beyond the record. I tell you, if you would do something for me, like the next time you do this, and again, God bless you for doing it, make your representation or end of representation public on the docket. I think it's better for you, it's better for your client. Without question, and that would be done. With the assumption that this court does have jurisdiction to entertain the merits on the appeal. Before you continue, everyone, I think, has conceded that the motion by your client was timely filed, so that's clear, correct? Yes. Okay, thank you. The video that was played to the jury showed in high definition, full color, my client carjacking someone in broad daylight at the Marriott Hotel, not far from this courthouse, under the influence of drugs, and essentially, as I described it, pinballing off of both vehicles and human beings. Before trial, we had moved in Lemonade to keep it out. The argument was rather simple. This is an excessive force case. The force was applied 12 hours later at a completely different location. Okay, but isn't the video, isn't it probative to the fact that your client probably suffered injuries as a result of the carjacking? The answer to that question is there was a potential for probative value, however, there was a complete absence, and the record as we sit here today shows no evidence ever came in to even support the assertion, which is what defense counsel said below, the transcript bears out more than the written pleadings. We intend to elicit that, at trial, that there's evidence that he was injured on scene. As it turned out, at trial, the only direct evidence that even addressed this was through Mr. Ruiz himself, who said he wasn't. And to answer your Honor's point- Doesn't the video show that the hotel employees actually were trying to take him out through his neck from the car when he carjacked the vehicle? Candidly, I don't remember what body part they grabbed, I don't. But even assuming that they did, the next question for this court is let's assume marginal probative value. At the end of the day, nobody disputed my client had committed the crimes, nobody disputed the reliability that the video showed the crime being committed. The real question for this court, and which was the one for the court below, is if this is an excessive force case and nobody's disputing probable cause- But doesn't the video also have probative value to show what your client was willing to do in order to get away from the carjacking scene? It is probative to that, but that particular aspect of the case, so to speak, was completely irrelevant in the bigger picture of what his claims were. Remember, he was standing in the shoes as a plaintiff- Right, but wasn't he- didn't the officers testify that he tried to evade them, and as a result of them, they had to tackle him? At the hotel, yes, your Honor, that's correct. That was their testimony. They had a very different version of how they first encountered Mr. Ruiz. I will simply say this on the video point, because I don't want to belabor it, I do think it's actually rather straightforward, and there's one side of the line or the other. The only question asked by the jury in deliberations was to see the video again. So we know with certainty that not only did they recognize it had some value to them, but that ultimately short- I mean, they were deliberating for hours, they send the question, they come in, they see the video, and shortly thereafter, it's a defense verdict. The way I'm asking this court to review this issue is to simply say this, whatever marginal value the video had, because unquestionably, it does have some probative value. It was substantially outweighed by the risk of prejudice to my client, which ended up being realized. That said, even if this court were to not want to consider giving- Why can we assume that the jury looked at the video in order to determine that this was a bad guy, rather than in order to determine that, yes, maybe some of his injuries were caused during the original carjacking, rather than later through the use of force by the police? The answer to your question is, in the transcript, I think it's pretty telling how the defense counsel below ended their case. In closing argument, I believe the record is devoid of any reference of the city counsel arguing to the jury that the video ended up showing what they proffered to the court it would. In fact, the only argument that they presented to the jury, that being defense counsel, was that the video showed the heinous nature of the crime, and that the two defendant police officers were heroes. In the context of the argument presented to the jury, and then the jury coming out viewing it and coming back defense verdict, that is a reasonable inference to take, but again, this court is really actually on just simply an abuse of discretion standard to say, was its admissibility even proper, or an abuse of discretion, and our position is, because the court below misapplied Graham v. O'Connor in this context, that that in and of itself was the abuse of discretion. Now, the district court also took, at least in my experience, a far more active role than is contemplated by federal rule of evidence 614. During my direct examination of Mr. Ruiz below, the district court interjected numerous times. The things that were most concerning were those that were asking this court to view as a departure from the appearance of neutrality from the bench, meaning from the perspective of jurors, and these were things like, Mr. Ruiz admitted that when he stole the vehicle there was personal property in it, and that he sold it, took the money, and kept it. The district court then interjected and demanded from him to know, where did you sell it, at a pawn shop or a fence? Had him explain to the jury what a fence was, asked him the name of the fence, asked him where the fence was located in terms of street corners and intersections. This became, this transition rather, from an excessive force case into the re-criminal prosecution of Mr. Ruiz in terms of, what did you do with the stolen property? Nobody disputed he was convicted, he never disputed he committed the crimes, but the question is, why would the district court have intervened so exhaustively to cross-examine my client? The second most concerning prejudice, and I see my time... But didn't you, you were the one that initially opened the door to that, you asked that question, and there was a misunderstanding as to whether it was a pawn shop or a fence, and wasn't the court clarifying that a fence is an individual who sells stolen goods, as opposed to a pawn shop, which is a legitimate business? The answer to your question is yes, and in an isolated example with one follow-up question to clarify the court's understanding, there is no real issue. But the district court went further, three, four, five questions. But you're the one that asked the question, correct? I did ask the question about the property. But the district court also intervened and asked, did my client snort or smoke cocaine earlier that day? The mechanism for how he delivered drugs to his body was entirely irrelevant. Nobody disputed he took drugs after the court ruled in limonade, that evidence came in, and yet the district court took it upon itself to basically explain to the jury that not only was he on drugs, it was cocaine, not only was it cocaine. Was there an issue, though, at trial as to a crack pipe that was found at the hotel room, and weren't you disputing or didn't you move to exclude that from evidence? We did, and my time is short, but that is a good transition to the final point, which is related to this crack pipe that simply does not exist in the record. Pretrial defense was animate, they were going to prove my client had a crack pipe in the hotel room. It turns out on the record evidence of trial, there's not a single police officer who testified to that. In fact, when defense counsel really just tried to throw his own witness a softball, one of the officers was like, no, I didn't see it, I don't know that. Then you have a closing argument where defense counsel says, I don't care what anybody says, basically saying, I don't even care what the evidence shows, I'm telling you as a lawyer, my personal commentary, that's a crack pipe, period. And that really compounded the error that earlier where the district court asked the question. I see my time has elapsed, and unless the court has any further questions, I'll reserve the rest of the time for rebuttal, please. We'll hear from you then. Thank you. Thank you. Ms. McNulty, let me ask you a question regarding the jurisdictional question. You concede in the papers that the defendant timely filed a pro se motion for a new trial, I think, or a motion to reconsider, correct? Yes, Your Honor. It was a motion for a new trial. It was timely. And if it was timely, then the notice of appeal in this case also would have been timely, correct? No, Your Honor. The motion was timely, but I think, no, I don't think I know, that our position is that the motion, although timely, was not proper. No, I understand that, but let's assume that the motion was timely, it's timely, correct? You agree that he filed it timely? Yes, Your Honor. Once the trial court entered the order saying that the motion was not proper because it was filed by a defendant who was being represented by a counsel, and he filed a notice of appeal from that order, was the order, the notice of appeal timely for purposes of our jurisdiction? No, because the question is whether or not the motion is a nullity. No, answer the question. The question is, when the trial court entered its order, was the notice of appeal timely from the date of that order? Yes. Technically, yes. Okay. So now the question I have for you is, under Rule 4A, a motion that is timely tolls the time for filing a notice of appeal, correct, until the trial court disposes of said motion? Correct. Facially, that is the only requirement. And when you look at a just plain, ordinary meaning of the word dispose, dispose means to settle a matter finally to get rid of, to deal with conclusively. So in this case, when the trial court entered the order saying this motion is not proper, did that not dispose of the motion? No, because there are other factors that overlay the rule. For example. Like what? For example, because the rule itself just says, if a party files in the district court and does so within the time allowed by those rules, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion. All it says is it has to be timely, and we all agree here that the motion itself was timely. So when the trial court enters an order disposing of the motion, how is that not? I understand. But Your Honor, there's like there's an overlay to that. For example, a party cannot just file any motion titled motion for new trial, for example, that doesn't have, for example, substance that in the rule. I know it doesn't say it in the rule, Your Honor. But under the case law, if the if the rule, if the motion does not have any substance under rule seven, is it your position that this motion did not have any substance? No, but it is. And that's not a good argument, Mr. McNulty. Try another one. Well, it is our position that the rule that the motion, because it was filed by a pro se party while they are represented, is a nullity under the case law. Well, where in the rule does it say that? Because the rule only says that it is the time is told until the trial court disposes of the motion. I understand. Was that not a disposition of the motion saying the trial court could have stricken the motion? Is that not a disposition of the motion? Yes, technically. But the trial court can strike a motion that has no substance and it's still under the case law. Does the case law trump or does the rule trump? Well, I think there can be an overlay of the rule with the case law. Let me ask you, is your position that the condition precedent, which is a party filing, didn't happen here because a pro se person who's actually represented by counsel doesn't qualify as a party under the rules? No, it's our position that the motion must be timely and proper. And I know that the rule doesn't expressly say that, or valid. It's that if something's a nullity, it's like it doesn't happen. And there is case law that says that a pro se motion, if filed by someone who's represented, is essentially a nullity. Like, for example, if a corporation can't file a pro se motion, that's a nullity under the case law. And we're arguing that it's the same thing, that you're not entitled to hyper-representation, that a pro se motion is the same thing, it's a nullity. So you're arguing, you're not arguing that the party didn't really file the motion because the party didn't exist in some sense because he's represented. You're saying instead, yes, he did, this person as a party filed the motion, but it's just that it was a nullity because he wasn't represented. Do you see the difference that I'm suggesting between those two things? Yes. No, the pro se, the person is a party. The party was Mr. Ruiz. He's just, it's a difference between whether you are electing to be represented or pro se. And the case law says you can't be both at the same time. And if he's represented, then he can't be pro se, and that's what the local rule says, that's what the case law says. And so if the, and you can't respectfully to opposing counsel, you can't assert that you are not representing someone, you know, just because you're agreeing between yourselves that you're not representing them and not file a notice of withdrawal, and then sort of get around that case law as our position. You speak as though, you know, Mr. Ruiz planned it this way. I mean, he did everything he could, did he not, to affect his appeal? Yes, Judge Martin, I agree. And I mean, he can't file something on behalf of his attorneys saying they told me they withdrew, can he? I mean. Yes. I mean. It would seem unfair. It would be unfair to someone. I mean, you know, when you're asking me to, you know, look at this record and say this thing that happened didn't really happen, you know, that's a difficult one for me. I think we have to acknowledge that this litigant did everything within his power to affect his appeal. And you don't disagree with that, do you? No, I don't disagree. And I don't blame Mr. Ruiz at all. I think the actions that should have happened were of his counsel, not of Mr. Ruiz. He did do everything he could have done here. But moving on to the merits, unless anyone has any more questions on the jurisdictional issue. The issue here is that almost everything that they're raising on appeal is unpreserved. So I just wanted to highlight that. With respect to the video evidence in particular, before I get to the merits of the video evidence and the merits of what they're arguing, they brought a motion in limine to exclude it and it was denied. But then after that, they elected to bring it in themselves. They put on the video in their opening, right before their opening. And under the case law, you waive an objection to evidence by introducing it preemptively under Oler, which is the United States Supreme Court case. So even if the argument were preserved for appeal, the evidence was properly admitted under Graham. One of the factors under Graham, which is an assessment of whether the officers properly used excessive force or whether the force they used was reasonable, is the severity of the underlying crime. And here the video is evidence of the severity of the underlying crime. The appellants argued that the officers were not aware of the crime and therefore the video was not probative of their knowledge of the severity of the crime, but the officers' affidavits and their testimony showed that they were aware of what the crime was. And so the video documentary evidence just reflected that, the crime, and as your honors have pointed out, it also spoke to whether or not the crime could have been the cause of Mr. Ruiz's injuries. In terms of the intervention of the district court and the questions, this is also unpreserved error. Nothing was objected to by counsel. You know, it makes me think about, a long time ago when I used to try cases, there was a saying, you know, when the judge starts questioning somebody, what do you do? And the kind of joke about it is, your honor, if you're asking that question for my opposing counsel, I object. If you're asking it for me, I withdraw it. It's hard to deal with. Well, I mean, I guess you could ask to go sidebar. I understand that the jury is present and it's always a little tricky and you're walking a fine line. But at the same time, you know, in order to preserve, you do need to lay a record. At the same time, none of the inquiries that the judge made spoke to the ultimate issues in the case, and I think that's important for the plain error analysis. The case that was cited, Newman, in the appellant's brief, that case is very distinguishable because the judge there, the questioning that the judge undertook went to the ultimate issue in the case. It was a case about a company that made cattle feed that they were alleging had poisoned or injured the cows and killed them. And the judge asked a question where it, like, assumed that the cows had been poisoned. And so it really did taint the trial. And here are the questions that were being asked and the issues that kind of went into, in addition to being sort of them opening the door, were not the ultimate issue. The judge wasn't asking any questions on the excessive force issue or sort of like the takedown by the officers or anything like that. So I think in a plain error analysis, it's not, you don't really get there. As to the statements made by the defense counsel, I think, you know, when you look at it, again, most of them were not objected to. And I think when you look at it in the totality of the two-day trial, I know that they list a lot of statements, but they were sort of sporadic through trial. And again, they were mostly commenting on things that they were already in evidence that the jury already knew about, that the jury had already seen the video. A lot of it was about things that the jury was aware of. And I don't think, again, under a plain error analysis, that you, that they weren't reversal. And then I guess, I guess unless the court has any more questions, I would, I would just ask that you affirm. Thank you. We appreciate the presentation. Thank you. I would like to spend the balance of my time on rebuttal addressing the final point that Apelli just referenced, which deals with the defense counsel's commentary below. Yes, this is a two-day trial, but the record is replete with instances that, and I'm still candidly not aware whether the, Apelli's position is that all of the comments are proper and unpreserved or they're improper but unpreserved. But I think that this court can make that determination on its own. We can see that most of them were unpreserved for Apelli review. But here's the thing. You have an opening statement where a defense counsel tells a jury, guess what? Let me tell you about all these discovery violations, all this evidence we didn't, we hid from this man when he was a pro se litigant. He doesn't know this. He's learning right now. So are his lawyers. He was getting his cell phone tracked. This story was running hot on international news. None of that stuff came into evidence. Nobody came in to talk about the media. That had no relevance whatsoever except to begin the trial by inflaming passions. That same lawyer then closed the case by inflaming passions as well, by saying his clients were gallant heroes. And by the way, most of the commentary was not about things that did come into evidence versus didn't. It was simply a lawyer giving improper personal opinions on his view of the evidence or lack thereof. And that's the problem. When you look at that in the totality of the case, you have a defense lawyer who's basically telling the jury, disregard the evidence, let me tell you what it really is and let me tell you how you should really vote here. And that's our concern for Mr. Ruiz. That being said, unless the court has any other questions on any of the issues, we'd ask that you reverse and remand with instructions for a new trial. Thank you for your presentation. And thank you for doing this pro bono work. My pleasure. I think really the courts couldn't function without people being willing to do what you and your law firm have done. So thank you. Thank you. Have a great day.